ALDRICH, Senior Circuit Judge.
 

 Alan S. Canter, Elco Resort Developers, Inc. and Greylock Glen Corporation (appellants) seek ultimately to regain possession of 1,162 acres of land situated in northwestern Massachusetts in the town of Adams. They appeal three judgments of the district court, dismissing as moot their appeals from an order of the bankruptcy court that allowed appellee Community Savings Bank to foreclose mortgages on the property. We affirm.
 

 Each appellant owned a portion of the 1,162 acres, and together they were building on the land the Greylock Glen project, a 550 room hotel and convention center featuring a ski resort and a golf course. Community Savings Bank provided the primary funding for the project. From May, 1973 until October, 1974 the bank made seventeen loans to appellants totaling $3.8 million in principal. The loans were secured by mortgages which, cumulatively, encumbered the entire project site. In October funding by the bank ceased, appellants were unable to secure adequate financing elsewhere, and all work on the project halted. The golf course and ski resort had already neared completion, but only the gradings and foundation had been installed for the hotel and convention center. Since then appellants have made no payments on account of interest or taxes, and the bank has been obliged even to incur expenditures to maintain the golf course. In 1978 it commenced foreclosure proceedings. Appellants responded with petitions seeking protection under the reorganization provisions of the bankruptcy laws, the corporate debtors filing under Chapter XI and Canter under Chapter XII. As a result, the bank was automatically stayed from proceeding with the foreclosures. Rules Bankr.Proc. 11-44(a); 12-43(a).
 

 A month later, the bank instituted adversary proceedings against each of the debtors, seeking to lift the automatic stays and to foreclose the mortgages.
 
 See
 
 Rules Bankr.Proc. ll-44(d); 12-43(d). Appellants again responded, this time by filing counterclaims to extinguish and recoup the mortgages, advancing what the bank has termed “the meritless but now fashionable” argument that the bank breached an oral promise to loan appellants $32 million. In 1979 appellants attempted to withdraw the counterclaims from the bankruptcy court and to assert them in state court. The bankruptcy court enjoined them from doing so and retained summary jurisdiction over the counterclaims. Appellants failed timely to appeal the jurisdictional issue.
 

 Trial was held before the bankruptcy court in September, 1979, but only on the issue of lifting the automatic stays, and not
 
 *3
 
 on the counterclaims. On January 16, 1980 the court issued findings of fact and conclusions of law, accompanied by orders lifting the stays. The court found that the mortgaged property had a value of approximately $2.5 million, that encumbrances on the property totaled $7.5 million, and that appellants lacked any realistic chances of perfecting an arrangement. In addition, it found that the bank had been forced to spend over $230,000 to maintain the mortgaged property. The decision to lift the stays did “not preclude the debtor[s] from continuing their action for damages for breach on the alleged contract.”
 

 Appellants appealed to the district court, claiming that the bankruptcy court should have offset their counterclaims against their debt, and that the court’s valuation of the Greylock Glen property at $2.5 million was clearly erroneous. Contemporaneously, appellants filed a motion in the bankruptcy court for a stay of the January 16 order pending appeal to the district court. On February 11, 1980, the bankruptcy court denied this motion. Four days later the district court did likewise, being “not persuaded that equities lie with Appellants.”
 

 Free at last from injunctive restraint, the bank quickly consummated the foreclosure process. A foreclosure sale was duly advertised for and held on February 20, 1980. Numerous prospective bidders attended the sale, but the bank was the only actual bidder. Through three separate purchases, the bank acquired the entire tract of land for $2.7 million against an aggregate debt, including interest, of over $6 million. The sale was approved by the Massachusetts Land Court.
 

 The appeals from the January 16th order remained pending in the district court. Following the foreclosure sale, however, the bank moved their dismissal as moot, relying upon Rule 805 of the Rules of Bankruptcy Procedure which states in relevant part:
 

 “Unless an order approving a sale of property ... is stayed pending appeal, the sale to a good faith purchaser .. . shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser ... knows of the pendency of the appeal.”
 

 After oral argument and two rounds of briefs, the district court concluded that the bank was a good faith purchaser within the meaning of Rule 805. Accordingly, on September 26, 1980, it issued a memorandum and the orders dismissing as moot the appeals of the January 16th order.
 

 Appellants attack, on statutory and due process grounds, the procedure employed by the district court to decide the mootness issue. Contending that the court lacked authority under the Bankruptcy Act and its rules even to entertain the bank’s motion to dismiss, they label the motion an independent plenary action to clear title to the Greylock Glen property, and claim the bank should have sought a state court declaratory judgment as to its status as a good faith purchaser. These contentions are meritless. Any court necessarily has jurisdiction to inquire into its own jurisdiction,
 
 United States v. United Mine Workers,
 
 1947, 330 U.S. 258, 289-92, 67 S.Ct. 677, 693-95, 91 L.Ed. 884, and mootness of an appeal,
 
 viz.,
 
 the absence of a live controversy, is just such a case.
 
 DeFunis v. Odegaard,
 
 1974, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (per curiam).
 

 Next, appellants complain that the district court deprived them of due process by relying upon briefs and oral argument to determine whether the bank was a good faith purchaser. According to appellants, the court should have conducted a full evidentiary hearing on the issue. Appellants forget, however, that there already was a record; the burden was on them to supplement it, if they wished. The district court decided the issue of ultimate fact — the bank’s good faith — on the basis of underlying facts that were not in dispute. Both parties agreed that the bank had conducted a public sale of the Greylock Glen property on February 20, 1980, that the bank had purchased the property for $2.7 million, and that the Massachusetts Land Court approved the sale. In their briefs, appellants were able to raise a number of supposed irregularities in the advertising and conduct
 
 *4
 
 of the sale. The bank responded not by contesting appellants’ facts, but by explaining them. As the court stated in
 
 In re Bleaufontaine, Inc.,
 
 5 Cir., 1981, 634 F.2d 1383, 1388, in response to a similar due process claim, if the appellants “had wished to introduce any other evidence relevant to bad faith, they had many opportunities in which to do so.”
 

 Turning to the merits, we agree with the district court that the bank was a good faith purchaser of the property within the meaning of Rule 805 and, consequently, that appellants’ appeals of the bankruptcy court order were moot. We note at the outset that the fact that the bank was both the seller and purchaser of the property, and a party to the dismissed appeal does not affect its status under Rule 805. The rule does not distinguish between mortgage holders and other potential purchasers of encumbered property. It is designed to give finality to orders of the bankruptcy court that have not been stayed pending appeal.
 
 E. g., In re Bleaufontaine, Inc.,
 
 ante, at 1389 n.12;
 
 In re Rock Industries Mach. Corp.,
 
 7 Cir., 1978, 572 F.2d 1195, 1199; 14 Collier on Bankruptcy ¶ 62.03 (14th ed. 1976). No less than any other potential purchaser, the bank was entitled to bid upon the Greylock Glen property with the assurance that its title to the property would not be affected by appellate review months or even years later. Appellants, in default on their mortgages, were entitled to no more relief than the rules and statutes permitted them.
 

 No definition of “good faith purchaser” appears in the bankruptcy laws, but the traditional definition of the phrase, or its like, is one who purchases assets for value, in good faith, and without knowledge of adverse claims.
 
 E. g., Industrial Nat’l Bank v. Leo’s Used Car Exchange, Inc.,
 
 1973, 362 Mass. 797, 800, 291 N.E.2d 603, 605;
 
 In re Ferris,
 
 W.D.Okla., 1976, 415 F.Supp. 33, 41. The only adverse claim to the Greylock Glen property was that of appellants, created when they appealed the bankruptcy court orders allowing the bank to foreclose. Rule 805 expressly makes knowledge of those appeals irrelevant.
 
 See In re Rock Industries Mach. Corp.,
 
 ante, at 1199.
 

 To qualify as a good faith purchaser, then, the bank merely must have paid value for the property and have acted in good faith. We are satisfied that it acted in the “strictest good faith,”
 
 Union Market Nat’l Bank v. Derderian,
 
 1945, 318 Mass. 578, 582, 62 N.E.2d 661, 663. Appellants’ specific allegations of misconduct by the bank are uniformly frivolous. They received ample attention in the district court and merit no discussion here.
 

 The remaining question is whether the bank paid value. In the context of bankruptcy-related sales, a buyer is generally deemed to have purchased for “value” when he pays at least 75 per cent of the appraised value of the assets.
 
 In re Rock Industries Mach. Corp.,
 
 ante, at 1197 n.l. Here, however, the debtors’ property had received more than one appraisal, and the fair market value of the land was very much in dispute. Louis Abt, the appraiser for the bank, valued the property at approximately $2.5 million; appellants’ appraiser, Floyd Rossi, concluded that it was worth almost three times that amount. After reading reports and hearing testimony from both appraisers, the bankruptcy court adopted Abt’s figure of $2.5 million. Appellants attempted to challenge this finding as clearly erroneous in their mooted appeals. The short answer is that it was not.
 

 Abt testified credibly that the explosion of interest rates after 1974 precluded completion of the hotel-convention center. Appellants presented evidence that there was potential demand for a convention center in Adams, but not that the Greylock Glen project was financially viable. Rossi’s appraisal of $7.3 million was based upon sale of the golf course at $10,000 per acre, the ski area at $5,000 per acre, and the remaining land at $3,500 per acre. The court properly discounted this valuation of the golf course, since it was based solely upon replacement cost rather than more relevant guides to current market value, such as comparable sales. Abt testified to financial difficulties currently plaguing golf courses,
 
 *5
 
 and estimated the value of the golf course at $3,000 per acre. This was consistent with evidence of comparable sales in the New England area. The court also disbelieved Rossi’s estimate of $5,000 per acre for the ski resort. Adopting Abt’s much lower estimate of $1,179 per acre was not clear error in light of his testimony that the land had not been significantly improved since its purchase a few years earlier at that price, and that the general economic climate for ski resorts was unfavorable. Next, Ros-si’s estimate of $3,500 per acre for the remaining land was based upon what the bankruptcy court could reasonably have found to be an unduly optimistic forecast of housing demand in the Adams area. Abt testified that the demand for residential housing in Adams was quite low and that a developer would probably be able to sell only twelve to fifteen lots per year. Under prevailing interest rates, this would provide an adequate return on investment only if the land were sold at a discount. Accepting Abt’s appraisals of $2,000 and $3,000 per acre for portions of this land was therefore not clearly erroneous. Finally, as to appellants’ claim that the possibility of legalized gambling in Adams has substantially increased land values there, we need only say that the court’s finding that speculation over the possibility of gambling in Adams did not significantly enhance the value of the Greylock Glen property was fully justified. In sum, the $2.5 million appraisal was well supported by the record, and the $2.7 million the bank paid properly constituted value.
 

 Since the bank met all the requirements of a good faith purchaser under Rule 805, appellants’ prime contention on appeal from the bankruptcy court order — that the bankruptcy court should have found equity in the property on the part of appellants — is moot.
 
 *
 

 In
 
 re
 
 Dutch Inn of Orlando, Ltd.,
 
 5 Cir., 1980, 614 F.2d 504 (per curiam);
 
 In re Rock Industries Mach. Corp.,
 
 ante;
 
 In re National Homeowners Sales Service Corp.,
 
 4 Cir., 1977, 554 F.2d 636 (per curiam).
 

 We regard this appeal as so frivolous as to warrant the imposition of double costs, and it is so ordered.
 

 The judgment of the district court is affirmed.
 

 *
 

 In addition to appellants’ moot contention that their counterclaims gave them equity in the property, they raised several other issues concerning the counterclaims which the district court deemed interlocutory appeals. These issues now await district court review following the bankruptcy court’s grant of summary judgment to the bank on the merits of the counterclaims.