In re ROCK INDUSTRIES MACHINERY
CORP., f/k/a Lippmann, Inc.,
Bankrupt.

Appeal of LITTON SYSTEMS, INC.

No. 77–1177.

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1977.

Decided March 31, 1978.

Thomas G. Boyer, Milwaukee, Wis., for appellant.

Albert Solochek, Milwaukee, Wis., for bankrupt.

Before BAUER and WOOD, Circuit Judges, and MARSHALL, District Judge.*

* The Hon. Prentice H. Marshall, United States District Court for the Northern District of Illinois, is sitting by designation.

BAUER, Circuit Judge.

Litton Systems, Inc. appeals the district court's dismissal of its appeal of a bankruptcy judge's order confirming the sale of Rock Industries' assets to Joseph Gabriel as moot under Rule 805 of the Federal Rules of Bankruptcy Procedure because a stay of the order confirming the sale had not been obtained from the bankruptcy judge. Litton contends here that its appeal was not mooted by the failure to obtain a stay order because Gabriel was not a "good faith purchaser" within the meaning of Rule 805. We disagree and affirm the district court's judgment for the reasons noted below.

I.

These proceedings were commenced in 1973 under Chapter 11 of the National Bankruptcy Act. On April 12, 1976, Rock Industries was adjudicated a bankrupt, and straight bankruptcy proceedings began. Litton, a creditor of Rock, claims title to certain assets held by Rock at the time it was adjudicated bankrupt and has pursued the claim against the trustee in a pending civil action in the district court.

On July 9, 1976, a notice of a public sale of Rock's assets was issued which inadvertently made no reference to the assets claimed by Litton. Three days later, the judge issued an order authorizing the sale of the bankrupt's assets, including the assets in dispute. Upon receiving notice of the order authorizing sale, Litton moved to have the assets to which it claimed title impounded and withheld from sale. Its motion was not acted upon by the bankruptcy judge, but the trustee's counsel did tell Litton that the assets in dispute would not be sold at the auction. Nevertheless, on August 10, 1976, a public auction was held offering Rock's assets for sale, including the assets in dispute. Joseph Gabriel successfully bid $380,000 for the bankrupt's assets in bulk, free and clear of all liens and encumbrances.

At the confirmation hearing held the next day, the trustee told the court that he could not recommend confirmation of Gabriel's bid because the assets of the bankrupt could not be delivered to any bulk bidder free and clear of the Litton claim that was pending in the district court. Gabriel then came forward with a modified bid of $350,000. Under the terms of his proposed bulk bid, he would take free and clear title to all the bankrupt's assets except those in dispute between the trustee and Litton. As to the assets in dispute, Gabriel would receive a quit claim of whatever interest the trustee held in the assets subject to the outcome of the pending litigation. Both the trustee and the auctioneer recommended that the court confirm the bid or any higher bid received at the hearing on the same terms. Litton's counsel then moved to postpone the hearing for 24 hours so that counsel could determine whether Litton wished to bid for the assets. When Gabriel refused to hold his offer open during any postponement, the judge denied Litton's motion. The assets were then offered for sale to those present at the confirmation hearing on the basis proposed by Gabriel, and his bid was confirmed over Litton's objections: (1) that the notice of sale inadequately described the assets to be sold at auction; and (2) that the court abused its discretion in permitting the trustee to hold what was, in effect, a "private" sale at the confirmation hearing. An order confirming the sale of the assets was entered on August 13, 1977.

On August 17th Litton filed a notice of appeal of the order confirming sale with the district court and moved the bankruptcy judge to stay his order. Gabriel and the trustee opposed the stay motion, and the judge denied it after a hearing. Litton then moved the district court to stay the order confirming sale, but its motion was again denied after a hearing. Thereafter, the district court dismissed Litton's appeal as moot under Rule 805, which provides in relevant part that,

"[u]nless an order approving a sale of property . . . is stayed pending appeal, the sale to a good faith purchaser . . . shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser . . . knows of the pendency of the appeal." Fed.R.Bank.P. 805.

On appeal here, Litton claims that Gabriel's "good faith purchaser" status was destroyed by: (1) his participation in a private pre-auction conference with the judge and the trustee at which Gabriel learned that the judge probably would not confirm any bulk bid "free and clear" of Litton's claims to the assets in dispute; (2) his acquisition of a waiver of a claim against the bankrupt's assets subject to his purchase of the assets; (3) his refusal to permit a postponement of the confirmation hearing so that other bidders could prepare competitive bids; and (4) his notice of the alleged irregularities in the sale that are the subject of Litton's appeal.

## II.

It is clear that Rule 805 effectively moots Litton's appeal of the order confirming sale if Gabriel is deemed to be a "good faith purchaser." *Country Fairways, Inc., v. Mottaz,* 539 F.2d 637, 641 (7th Cir. 1976). Yet, neither the Rule itself nor the Committee Notes appended thereto provide a definition of the phrase "good faith purchaser" or a body of case law from which a definition may be gleaned. Accordingly, the parties urge us to apply the traditional equitable definition of a "good faith purchaser" as one who purchases the assets for value, in good faith, and without notice of adverse claims. E. g., *In re Ferris,* 415 F.Supp. 33, 41 (W.D.Okl.1976). It is not disputed that Gabriel purchased the bankrupt's assets for value.[1] The parties do disagree, however, over whether Gabriel was acting in good faith during the course of the sale and whether he had notice of adverse claims

---

1. Fair and valuable consideration is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets. MacLach- lan, *Handbook of the Law of Bankruptcy* 348 (1956). Gabriel paid $350,000 for assets having an appraised value of $270,000.

that would destroy his good faith purchaser status.

■ The requirement that a purchaser act in good faith, of course, speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders. See, e. g., *In re Webcor, Inc.*, 392 F.2d 893, 899 (7th Cir. 1968). As the district court observed, however, no such flagrant misconduct has been alleged in the circumstances of this case.

Litton claims that Gabriel was not acting in good faith because (1) he obtained information unavailable to other bidders at the auction during a private meeting with the judge and the trustee prior to the auction; (2) he obtained a waiver of a claim against the bankrupt's assets conditioned upon his purchase of the assets; and (3) he refused to permit a postponement of the confirmation hearing so that competing bids could be obtained. We find no merit in these contentions.

■ Gabriel's pre-auction meeting with the judge was not an ex parte effort to obtain any unfair advantage over other bidders. The meeting was requested by the trustee to seek a postponement of the confirmation hearing scheduled for the day after the auction, so that Gabriel would have time to speak with Litton in the hopes of settling its claim to the assets in dispute. Gabriel was a late entrant in the field of prospective purchasers, and the trustee was seeking the additional time for Gabriel in order to induce him to submit a higher bulk bid at the auction. The trustee's request was denied, and the allegedly "inside" information obtained at the meeting—that the judge had reservations about being able to confirm any bulk bid for the bankrupt's assets "free and clear" of Litton's claim to the assets in dispute—was publicly announced at the auction itself.

■ Nor do we find any misconduct in Gabriel's obtaining a waiver of a lien for unpaid rent on the bankrupt's assets conditioned on Gabriel's purchase of the assets. This was nothing more than the action of an astute businessman. Had Gabriel's initiative and foresight been shared by other bidders, they too could have obtained the same waiver.

■ Finally, Gabriel's refusal to hold his bid open at the confirmation hearing during any postponement ordered by the judge was well within his rights. Though the ultimate effect of Gabriel's refusal was to prevent Litton from obtaining additional time to prepare a bid, Litton's quarrel is with the judge who denied its motion for postponement, and not with Gabriel who would have been placed at a disadvantage vis-a-vis other bidders by not withdrawing an open bid during any postponement ordered. Had Litton itself agreed to hold the trustee harmless for any bid depreciation suffered as a result of a withdrawal of Gabriel's bid and postponement, we have little doubt the judge would have postponed the hearing as requested. Gabriel had no more obligation to keep his bid open than Litton did to guarantee that a comparable bid would have been received after postponement.

■ The parties next disagree about whether Gabriel had notice of adverse claims sufficient to destroy his good faith purchaser status. Traditionally, the requirement that a "good faith purchaser" take without notice of "adverse claims" has meant that the purchaser must have no "actual knowledge of the defects in the title [to the assets bought], or knowledge of such facts and circumstances as would have put a man of ordinary circumspection upon inquiry." *Meisirow v. Duggan*, 240 F.2d 751, 758 (8th Cir. 1957). This element of the traditional good faith purchaser test, of course, usually becomes an issue when an alleged good faith purchaser is seeking to extinguish adverse claims to title of which he had no actual or constructive notice at the time of sale. Litton appears to recognize that in this case, wherein Gabriel took only a quit claim of the trustee's interest in

the assets in dispute and is not asserting his good faith purchaser status against Litton in a suit to quiet title to those assets, Gabriel's knowledge of Litton's adverse claim to a portion of the bankrupt's assets does not defeat his good faith purchaser status for purposes of Rule 805. Litton argues, however, that inherent in the traditional requirement that a "good faith purchaser" have no notice of defects in title is the corollary requirement that the purchaser have no knowledge of any alleged irregularities in the sale from which he derives his title. According to Litton, because Gabriel was present at the confirmation hearing and thereby learned of Litton's objections to the confirmation of his bid, Gabriel had actual knowledge of the bases of Litton's appeal to the district court and thus was not a "good faith purchaser" under Rule 805.

The trustee, noting that Rule 805 itself renders a purchaser's knowledge of the pendency of an appeal irrelevant to determining his "good faith" status, argues that Litton's contention must be rejected because anyone who has knowledge of the pendency of an appeal must necessarily have actual or constructive notice of the grounds of the appeal. Accordingly, the trustee urges us to follow the district court's holding that "something more than knowledge of another party's objections to the bankruptcy sale procedures is required to bar a purchaser from 'good faith' status."

 We find ourselves in agreement with the position taken by the trustee and the district court, for it makes little sense to treat knowledge of the basis for an appeal any differently than knowledge of the pendency of an appeal for purposes of determining a purchaser's "good faith" status under Rule 805. After all, a purchaser who knows that an appeal is pending is likely to know the grounds of the appeal. Indeed, it might well be argued that knowledge of the latter should be presumed from knowledge of the former, for knowledge of the pendency of an appeal "would put a man of ordinary circumspection upon inquiry" into the grounds for the appeal. *Meisrow v. Dug-*

*gan,* 240 F.2d 751, 758 (8th Cir. 1975). As the district court observed, if Litton's position were adopted, no purchaser who attended a confirmation hearing at which objections were raised to the order confirming sale could ever be deemed a "good faith purchaser" under Rule 805. Such a result is plainly at odds with Rule 805's purpose of protecting the finality of orders confirming judicial sales. 14 *Collier on Bankruptcy* ¶ 62.03 (14th ed. 1976). In providing that a purchaser's knowledge of the pendency of an appeal of the order confirming sales does not vitiate his "good faith" status, Rule 805 protects the purchaser acting in good faith from having to speculate about the outcome of an appeal calling the sale procedures into question. We agree with the district court that the same protection extends to a purchaser who learns of the grounds of an appeal at the confirmation hearing.

Accordingly, the district court's judgment is

AFFIRMED.