764 F.2d 1019
 12 Collier Bankr.Cas.2d 1387, 13 Bankr.Ct.Dec. 415,
Bankr. L. Rep. P 70,602
 David Grant WILLEMAIN, Plaintiff,
and
Bernard M. Willemain, Appellant,
v.
Marc KIVITZ, Trustee and Hampshire Associates, Appellees.
In the Matter of Bernard Maurice WILLEMAIN, d/b/a Bernard M.
Willemain & Associates a/k/a Barnard M. Willemain, Debtor.
 No. 84-1919.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 2, 1985.
Decided June 20, 1985.
 
 E. Stephen Derby, Baltimore, Md. (Karen L. Myers Zauner, Piper & Marbury, Baltimore, Md., on brief), for appellant.
 Irving E. Walker, Baltimore, Md. (Shale D. Stiller, Frank, Bernstein, Conaway & Goldman, Marc R. Kivitz, Baltimore, Md., on brief), for appellees.
 Before RUSSELL, MURNAGHAN and ERVIN, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This is a bankruptcy case in which appellant/debtor Bernard M. Willemain (Willemain) challenges the district court's decision, which affirmed the decision of the bankruptcy court, holding that Willemain lacks standing to challenge the sale of his primary asset and that his appeal was mooted by the sale of the asset to a good faith purchaser. Finding that Willemain has no pecuniary interest in to whom the asset is sold and that the asset was sold to a good faith purchaser, we affirm.
 
 
 2
 * Willemain, a real estate entrepreneur, filed a voluntary Chapter 13 bankruptcy petition on May 6, 1980. Willemain's Chapter 13 petition was dismissed in January, 1981, because he failed to demonstrate that he received a regular income, a prerequisite to maintenance of an action under that chapter. On January 6, 1981, Willemain filed a voluntary Chapter 11 reorganization petition, and he submitted the requisite schedules revealing his liabilities and assets. Willemain's liabilities amounted to $546,893.66, and his assets were valued at $1,000,589. Of the assets scheduled, Willemain valued at $1,000,000 his 20% limited partnership interest (the interest) in Chapel Associates, a real estate partnership that owns only one 93.952 acre parcel of land in Baltimore County, Maryland. Finding that Willemain was unable to effectuate a plan and that Willemain had caused unreasonable delay, the bankruptcy court converted the reorganization proceeding into a Chapter 7 liquidation proceeding on February 10, 1982.[1] Thereafter, Marc Kivitz (Kivitz) was appointed as trustee.
 
 
 3
 Kivitz privately solicited buyers for the 20% limited partnership interest, which, as an unregistered and restricted security, could not be publicly advertised for sale. Moreover, by agreement between Willemain and his general partners in Chapel Associates, the interest could not be transferred to anyone but one who had an ownership interest in Chapel Associates. After searching for over five months, Kivitz received an offer of $100,000 from Hampshire Associates (Hampshire).[2] Hampshire held a security interest of $92,985.61 in Willemain's interest; therefore, the estate would realize $7,014.39 from the sale of the interest to Hampshire. Kivitz and Hampshire entered into an "Agreement of Sale" on August 24, 1982, subject to bankruptcy court approval, and notice of the proposed sale was sent to all of Willemain's scheduled creditors. Willemain objected to the proposed sale, contending that his interest in Chapel Associates was worth in excess of $1,400,000.[3]
 
 
 4
 By order dated June 21, 1983, the bankruptcy court dismissed Willemain's objections to the proposed sale and approved the proposed sale. The bankruptcy court found that the best interests of the estate would be served by the sale to Hampshire. The court rejected an eleventh hour offer by Max Israelson to buy the interest for $200,000. The Israelson offer was conditioned upon successful litigation concerning the transferability of the interest to one not a partner in Chapel Associates. The court stated that Willemain's various bankruptcy petitions had engendered long delay that was prejudicial to the interests of both the creditors and the debtor, and that to sanction further delay to litigate the transferability of the interest, which might prove unsuccessful, "would be unthinkable." The bankruptcy court further approved the proposed sale despite an appraisal of the interest performed by C. Gordon Gilbert. Mr. Gilbert appraised the interest at $907,500. The court found that the "appraisal cannot be considered worthy of reliance," because the appraisal was over 18 months old, because the appraiser failed to consider the sale of a similar parcel of land in the vicinity of Chapel Associates' parcel, and because the appraiser "exhibited little experience in valuing minority interests in limited partnerships which are not readily marketable." In approving the proposed sale, the bankruptcy court found that the sales price of $100,000 was not unreasonable, that the Hampshire offer "was the best offer the trustee could expect,"[4] that the proposed sale was in the best interest of the estate and that Hampshire had acted in good faith in making the offer.
 
 
 5
 Willemain then sought a stay of the proposed sale pending appeal to the district court. Both the bankruptcy court and the district court, however, denied Willemain's motion for a stay. The interest was thereafter sold to Hampshire and transferred to Hampshire's principals.
 
 
 6
 On appeal, the district court dismissed Willemain's appeal as moot and held that Willemain lacked standing to challenge the proposed sale. The district court found the appeal moot under section 363(m) of the Bankruptcy Code, 11 U.S.C. Sec. 363(m) (1983), because the property was sold to a good faith purchaser, that is, a purchaser who acted in good faith, gave value, and had no knowledge of any adverse claims. The court stated that the bankruptcy court expressly found that Hampshire had acted in good faith and implicitly found that Hampshire had given value, because the bankruptcy court found Hampshire's $100,000 offer "not unreasonable." Since such findings were not clearly erroneous, the district court found that Hampshire was a good faith purchaser and therefore that the appeal was moot. The district court alternatively held that Willemain lacked standing to challenge the proposed sale, because "an insolvent debtor has no standing to object to the trustee's sale of property unless a successful appeal would create an estate with assets in excess of liabilities." Since Willemain's liabilities exceeded his assets (absent the interest) by more than the value of Israelson's $200,000 offer,[5] the estate would not regain solvency were Israelson's offer accepted in place of Hampshire's. Consequently, the district court held that Willemain's appeal was moot and that Willemain lacked standing to bring the appeal. The district court therefore did not reach the merits of the bankruptcy court's order approving the sale to Hampshire.
 
 II
 
 7
 Initially, our standard of review of the bankruptcy court's findings of fact is the clearly erroneous standard set forth in Fed.R.Bankr.P. 8013. Since the present action involves a "core" or central bankruptcy proceeding,[6] approval of the sale of a debtor's asset, rather than a traditional state law matter, such as a contract claim, application of the clearly erroneous standard of review presents no constitutional difficulty under either the Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) or our decision in 1616 Reminc Limited Partnership v. Atchison & Keller Co., 704 F.2d 1313 (4th Cir.1983).
 
 
 8
 The district court correctly determined that Willemain lacks standing to prosecute this appeal. In the analogous setting of whether an insolvent debtor may object to the allowance of claims against the estate, the leading and authoritative bankruptcy treatise as well as numerous tribunals have held that an insolvent debtor is not a party in interest and thus lacks standing because he has no pecuniary interest in the distribution of his assets among his creditors. See 3 J. Moore & L. King, Collier on Bankruptcy p 57.17[2.1], pp. 275-277 (14th ed. 1977); 3 L. King, Collier on Bankruptcy p 502.01 (15th ed. 1985). The Eighth Circuit succinctly stated the general rule:
 
 
 9
 Thus, since the bankrupt is normally insolvent, he is considered to have no interest in how his assets are distributed among his creditors and is held not to be a party in interest. [citations omitted] However, when it appears that, if the contested claims are disallowed, there may be a surplus of assets to be returned to the bankrupt, the bankrupt is considered to have standing to contest the claims.
 
 
 10
 Kapp v. Naturelle, Inc., 611 F.2d 703, 706-707 (8th Cir.1979). See also In Re Woodmar Realty Co., 241 F.2d 768, 770-771 (7th Cir.1957); In Re Silverman, 10 B.R. 734, 735 (Bankr.S.D.N.Y.1981), aff'd, 37 B.R. 200, 201 (S.D.N.Y.1982); In Re Roberts, 20 B.R. 914, 916-917 (Bankr.E.D.N.Y.1982); In Re Lapointe, 39 B.R. 80 (Bankr.W.D.Ky.1984).
 
 
 11
 Applying the above principles to the setting before us, that is, whether an insolvent Chapter 7 debtor has standing to challenge the proposed sale of his primary asset, it becomes apparent Willemain lacks a pecuniary interest in this litigation. Even were we to concede that Israelson's contingent offer is worth $200,000, that amount would neither return solvency to Willemain's estate nor provide Willemain with a surplus. Willemain, after filing his Chapter 11 petition, reported his liabilities at nearly $547,000, while his assets, absent the 20% limited partnership interest, were reportedly worth only $589. The $200,000 Israelson offer, the only offer presented to and considered by the bankruptcy court, would thus not return solvency to Willemain's estate. Willemain has thus failed to demonstrate that an alternative sale of the interest would return solvency to his estate and he, accordingly, lacks standing to bring this appeal.[7]
 
 
 12
 Regardless of whether Willemain has standing to object to the sale of the interest to Hampshire, Willemain's appeal is moot because Willemain failed to secure a stay of the approved sale pending appeal and because that interest was sold to a good faith purchaser. Section 363(m) of the Bankruptcy Code provides:
 
 
 13
 (m) The reversal or modification on appeal of an authorization ... of a sale ... of property does not affect the validity of a sale ... under such authorization to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal.
 
 
 14
 11 U.S.C. Sec. 363(m) (1983). Although the Bankruptcy Code does not define "good faith purchaser," we adopt the traditional equitable definition that has been adopted by various courts of appeal: "one who purchases the assets for value, in good faith, and without notice of adverse claims." In Re Rock Industries Machinery Corp., 572 F.2d 1195, 1197 (7th Cir.1978) (construing former Fed.R.Bankr.P. 805). See also In Re Bel Air Associates, Ltd., 706 F.2d 301, 305 (10th Cir.1983) (same); Greylock Glen Corp. v. Community Savings Bank, 656 F.2d 1, 4 (1st Cir.1981) (same). We must, therefore, determine if Hampshire qualifies as a good faith purchaser.
 
 
 15
 Initially, "value" has repeatedly been defined as 75% of the appraised value of the asset. In Re Rock Industries Machinery Corp., 572 F.2d at 1197 n. 1; Greylock Glen Corp., 656 F.2d at 4. Hampshire paid $100,000 for the interest, an interest valued at $907,500 by appraiser Gilbert. At first blush it would thus appear that Hampshire failed to give value, or 75% of the appraised value, for the interest. The bankruptcy court, however, properly discredited and ignored the Gilbert appraisal because it was over 18 months old, because Gilbert failed to take account of the sale of a similar parcel located near Chapel Associates' parcel, and because Gilbert had little experience in valuing minority limited partnership interests. Moreover, Hampshire's $100,000 offer was no less valuable than Israelson's contingent $200,000 offer, which was subject to successful litigation of the transferability of the interest. In addition, the bankruptcy court's express finding that the $100,000 price was "not unreasonable," a finding that is not clearly erroneous, demonstrates that Hampshire indeed gave value for the interest.
 
 
 16
 Second, there is no indication that Hampshire did not act in good faith during the course of the sales proceedings. "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." In Re Rock Industries Machinery Corp., 572 F.2d at 1198. In the case sub judice, Hampshire was the only bidder for the interest until Israelson's offer was made shortly before the bankruptcy hearing took place. It is thus apparent that Hampshire neither engaged in collusion with nor took grossly unfair advantage of other bidders. In addition, the record reveals no fraud on Hampshire's part. Moreover, the district court found that Hampshire had acted in good faith: again, that finding is not clearly erroneous. That Willemain's general partners in Chapel Associates also have an ownership interest in Hampshire does not, without more, amount to a lack of good faith in connection with the sales proceedings.
 
 
 17
 Finally, as the language of section 363(m) reveals, Hampshire's knowledge of the pendency of Willemain's appeal does not deprive Hampshire of good faith purchaser status on the basis of knowledge of adverse claims. In Re Rock Industries Machinery Corp., 572 F.2d at 1199.
 
 
 18
 Finding as we do that Hampshire was a good faith purchaser under Sec. 363(m) of the Bankruptcy Code and that Willemain failed to secure a stay pending appeal, we are compelled to find that Willemain's appeal challenging the bankruptcy court's order approving the sale to Hampshire is moot. In Re Vetter Corp., 724 F.2d 52, 54-56 (7th Cir.1983); In Re Bel Air Associates, Ltd., 706 F.2d at 306; In Re National Homeowners Sales Service Corp., 554 F.2d 636, 637 (4th Cir.1977) (per curiam).
 
 
 19
 Accordingly, the judgment of the district court dismissing Willemain's appeal is
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 The action was converted under the authority of Sec. 1112(b) of the Bankruptcy Code, 11 U.S.C. Sec. 1112(b) (1983)
 
 
 [2]
 Willemain's general partners in the Chapel Associates venture were Robert and Allan Morrow; they each also have an ownership interest in Hampshire
 
 
 [3]
 David Grant Willemain, Willemain's son, also objected to the proposed sale, but he, unlike the debtor, has not appealed from the adverse decision
 
 
 [4]
 Although trustee Kivitz stated before the bankruptcy court that he no longer believed that the proposed sale was in the best interests of the creditors, the bankruptcy court noted that the "trustee expressly declined to withdraw his proposed sale" from the court's consideration
 
 
 [5]
 The parties have quarreled at length over the contents of the record in this case, with primary focus concerning exhibits and documents neither submitted to nor considered by the bankruptcy court. In particular, Willemain has produced an offer by Joseph Meyerhoff to loan Willemain up to $275,000 to bail him out of his financial woes, and Willemain has submitted a second appraisal of his interest which values the interest at $825,000. The quarrel over the contents of the record has been carried on in vain, however, because this court can consider only evidence presented to and considered by the bankruptcy court. Since neither the Meyerhoff offer nor the second appraisal were before the bankruptcy court, we cannot consider either
 
 
 [6]
 See 28 U.S.C.A. Sec. 157(b)(2)(N) (Supp.1985)
 
 
 [7]
 As we stated previously, since the Meyerhoff offer and the second appraisal were not before the bankruptcy court, we shall not consider them. See supra note 5. However, the $275,000 Meyerhoff offer, as the Israelson offer, would also not have returned solvency to Willemain's estate, due to the sheer enormity of Willemain's liabilities. Furthermore, the second appraisal, which valued the interest at $825,000, is irrelevant insofar as whether an offer better than $100,000 was presented to the bankruptcy court. A favorable appraisal without a corresponding actual purchaser cannot be allowed to stymie a bankruptcy court as it attempts to decide expeditiously matters before it