**In re CHARTERHOUSE, INC., Debtor.**

**Bankruptcy No. 3–86–3166.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

April 1, 1988.

John H. Morris, Kirkland & Ellis, Chicago, Ill., for debtor.

Craig Curry, Oppenheimer, Wolff & Donnelly, Minneapolis, Minn., for First Nat. Bank Minneapolis, Indenture Trustee.

Scott A. Johnson, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for Official Bondholders' Committee.

ORDER DENYING MOTION OF BOND-
HOLDERS' COMMITTEE FOR MODI-
FICATION OF CONFIRMATION
AND POST–CONFIRMATION OR-
DERS

GREGORY F. KISHEL, Bankruptcy
Judge.

This Chapter 11 case came before the
Court on September 15, 1987, upon the
motion of Debtor's Official Bondholders'
Committee for an order modifying the con-
firmation and post-confirmation orders in
this case. The Committee appeared by its
attorney, Scott A. Johnson. Debtor ap-
peared by its attorney, John H. Morris.
The First National Bank of Minneapolis,
Indenture Trustee, appeared by its attor-
ney, Craig Curry. Upon the moving and
responsive documents, arguments of coun-
sel, and all of the other files, records, and
proceedings in this case, the Court makes
the following order.

Debtor filed a voluntary petition under
Chapter 11 of the Bankruptcy Code in this
Court on November 24, 1986. Debtor was
and is a Minnesota nonprofit corporation,
organized in 1981 to construct and operate
a large residential facility for retired per-
sons in Rochester, Minnesota. When this
case was commenced, Debtor's sole mem-
ber (owner) was the Mayo Foundation, an-
other Minnesota nonprofit corporation.
Debtor achieved its initial capitalization via
issuance of municipal revenue bonds by the
City of Rochester. The City used the bond
sale proceeds to fund a loan to Debtor for
the construction of its facility. The First
National Bank of Minneapolis (hereinafter,
"the Bank") served as Indenture Trustee
for the administration of the bond program
and various escrow funds established un-
der it. The bonds were issued as bearer
bonds and have been traded on the open
municipal-bond market. Debtor's aggre-
gate obligations to its bondholders were
secured by a mortgage in favor of the
Bank as Indenture Trustee against its facil-
ity, and a security interest against its reve-
nues, tangible personal property, and vari-
ous other assets. The face value of bonds
outstanding as of the commencement of
this case exceeded $39,000,000.00.

Debtor opened its facility in January,
1985. At no time during its operation has
its actual occupancy rate met its initial
projections. The prospect that it will ever
fully meet them is uncertain at best. As a
result, Debtor failed to generate cash flow
in amounts sufficient to meet operating
expenses and to make current principal and
interest payments on the bonds. Debtor
first defaulted on bondholder payments in
the spring of 1986. After the Bank raised
the prospect of foreclosure on its security
if Debtor continued in default, it and Debt-
or entered into protracted discussions in an
attempt to work out an obviously-untenable
situation. After months of negotiation,
and after Debtor obtained a commitment
from the Mayo Foundation for a substan-
tial cash infusion, the Bank and Debtor
finalized the basic form of a reorganization
plan. Shortly thereafter, Debtor filed the
petition that commenced this case.

The case was one of the more notewor-
thy Chapter 11 reorganizations in this
Court since the enactment of the Bankrupt-
cy Code of 1978, for several reasons: the
sheer magnitude of claims which were to
be treated and restructured under the plan;
the prospect of complex and novel substan-
tive issues; and the formidable logistical
task of insuring adequacy of notice to hold-
ers of bonds which were still traded on the
open market. The case was also notewor-
thy for the paucity of contested issues ulti-
mately presented for adjudication.

After laudable and herculean effort by
counsel for all parties in interest, a plan
was finalized under which bondholders' in-
dividual claims were to be satisfied via a
one-time distribution of 60 percent of the
face value of their bonds. The distribution
was to be made from a settlement fund of
$23,418,000.00, which was to be established
in part from the proceeds of a voluntary
capital contribution from the Mayo Founda-
tion. The plan provided that the settle-
ment fund would be administered and
bondholders' claims would be paid by the
Bank. The Bank was to receive the corpus
of the settlement fund from Debtor, after
the Mayo Foundation made its contribution
to Debtor and after the Bank released to

Debtor the monies in the various escrow accounts it had administered under the original bond program.

The Official Bondholders' Committee in this case actively and exhaustively evaluated Debtor's offer; alternative prospects of realization on bondholders' claims via foreclosure and re-sale of the facility; and the prospect of proposing a creditors' operating plan of reorganization. After a lengthy process of sharing of information, discussion, and evaluation—virtually all of which took place outside the purview of this Court—the Official Bondholders' Committee voted to recommend that bondholders accept Debtor's proposal. The Committee communicated its recommendation via a letter and notice separately transmitted to all bondholders, at the same time that Debtor's plan and disclosure statement were disseminated during the confirmation process.

The class of bondholders voted via a substantial majority (98 percent of ballots, 97 percent of principal balance on bonds) to accept Debtor's plan. The Court confirmed the plan on May 20, 1987. By June 8, 1987, Debtor had completed payment of all nonadministrative expense claims treated under its plan (including the payment of the settlement fund to the Bank), and had fully paid all but one of its administrative-expense claims.

Between confirmation and the date of hearing on the motion at bar, the Bank distributed approximately $22,000,000.00 from the settlement fund to bondholders who had surrendered their bonds in accordance with the plan. Approximately $1,000,000.00 remained unclaimed. During the time between Debtor's deposit of the corpus of the fund and the hearing on the Committee's motion, the settlement fund had accrued approximately $34,000.00 in interest.

The Committee now seeks authority to use the interest accrued on the bondholders' settlement fund in a manner not provided under Debtor's confirmed plan. The plan contemplates a second distribution to bondholders of the accrued interest on a pro rata basis, after the Bank distributes the corpus of the fund. In its written motion, the Committee requests Court authorization (via modification of the confirmation and post-confirmation orders) to use the accrued interest to pay a litigation-cost-and-fee retainer to a law firm with whose attorneys the Committee has discussed the commencement of class-action securities litigation against parties involved in the initial 1983 issuance and/or the subsequent marketing or re-marketing of Debtor's bonds. The written motion apparently contemplates a notice of the proposed modification and payment to all bondholders (with the cost of the noticing to be paid out of the accrued interest), with opportunity for bondholders to object to the modification; however, it appears to assume entry of an order approving the modification in the meantime. At hearing the Committee's counsel altered the Committee's request; the motion as orally qualified is now for authority to first notice the proposed modification to all bondholders, with opportunity for objection, and then for entry of an order approving the modification and disposition of the interest if no bondholder lodges an objection. Debtor has no objection to the revised notice procedure, but opposes the motion on its merits.

A grant of the motion, either as cast under the written pleadings or as qualified at hearing, is inappropriate. The Committee nominally casts its motion as one for the modification of this Court's confirmation and post-confirmation orders, insofar as ¶ 4.e. of the confirmation order and ¶ 2.e. of the post-confirmation order empowered and directed Debtor and the Bank to dispose of the settlement fund and its accrued interest in accordance with the plan. However, what the Committee really seeks is to modify the operative term of the confirmed plan itself. The Code provision governing post-confirmation modification of a Chapter 11 plan is 11 U.S.C. § 1127(b), which reads as follows:

(b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan

so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

Debtor opposes the motion on four stated grounds. Denial of the motion is mandated on three of those grounds.

## A. Standing to Bring Motion for Modification.

■ 11 U.S.C. § 1127(b) allows post-confirmation modification of a confirmed Chapter 11 plan, but on its face limits the parties who may bring a motion for such modification to "[t]he proponent of a plan or the reorganized debtor." *Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228, 234 (4th Cir.1987). The Committee is clearly not "the reorganized debtor," so the issue is whether it was a "proponent" of Debtor's confirmed plan. The term "proponent of a plan" is not defined in 11 U.S.C. § 101, but it is clear from a contextual reading of the provisions of Chapter 11 that the "proponent" contemplated by § 1127 is the party in interest who negotiates, formulates, disseminates, makes disclosure in connection with, and seeks acceptances of, a reorganization plan. *See* 11 U.S.C. §§ 1121 (specifying which parties in interest may file a Chapter 11 plan and when) and § 1129(a)(2) (requiring proponent of a Chapter 11 plan to comply with procedural requisites of confirmation process). *See also* H.R.REP. No. 595, 95th Cong. 1st Sess. 412 (1977); S.REP. No. 989, 95th Cong. 2d Sess. 126 (1978), U.S.Code Cong. & Admin.News 1976, p. 5787 (both contemplating the proponent of the plan as the party which has conducted the disclosure process under § 1125).

Here, Debtor was the party in interest who performed those functions. The Committee could have been the proponent of a creditors' plan, and apparently considered that option at one point in its evaluation. However, it never elected to do so. To be sure, the Committee was laudably and in-tensively involved in this case, and exhaustively evaluated Debtor's plan; to some extent it was involved in the formulation of the final language of that plan, as it was empowered to do under 11 U.S.C. § 1103(c)(3). It elected to endorse that plan and to urge members of the class of bondholders to accept it. The Committee's efforts certainly were productive, and it unquestionably made a major—perhaps pivotal—contribution to Debtor's reorganization. However, whether considered from the perspective of procedural nicety or from that of factual process, the Committee was not the "proponent" of the plan as it was ultimately confirmed. The Committee did not engage in the initial process of plan formulation or preparation; neither was it responsible for, nor did it undertake, the process of pre-solicitation disclosure, plan dissemination, monitoring of acceptances, or presentation of evidence at the confirmation hearing. Debtor took the initiative in all of these processes, beginning several months before commencement of the case. Practically speaking, the Committee's role over the duration of the case was a responsive one; while its involvement unquestionably affected the ultimate structure and fate of that plan, it did not generate the plan, and it did not act as the prime mover in pushing the confirmation process ahead. Simply stated, whether from a legal or factual perspective, the Committee was not the "proponent" of the plan. Hence, it lacks standing to propose a modification of it under § 1127(b).

## B. Event–Barring of Modification of Plan.

■ Section 1127(b) allows post-confirmation modification of a Chapter 11 plan after notice and a hearing, so long as the proposed modification is presented to the Court "before substantial consummation of such plan." The section operates to prohibit modification once "substantial consummation" has occurred. H.R.REP. No. 595, 95th Cong., 1st Sess. 411 (1977), U.S.Code Cong. & Admin.News 1976, p. 6367; *In re Northampton Corp.*, 59 B.R. 963, 969 (E.D.Pa.1984).

**152**

■ Under the definition in 11 U.S.C. § 1101(2), "substantial consummation" of a Chapter 11 plan takes place after:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

It is not surprising that there is a paucity of caselaw construing and applying this definition; it is a functional one, clear on its face, that essentially provides that a debtor has consummated its plan and has fully reorganized when it has vested itself with, or divested itself of, all property treated under the plan; when the reorganized business has been undertaken by the entity (usually the debtor) designated to do so under the plan; and when payments under the plan to claimants have commenced. Substantial consummation does not occur until all three of these events have occurred. *In re Gene Dunavant and Son Dairy*, 75 B.R. 328, 332 (M.D.Tenn. 1987). The question of whether a plan has been "substantially consummated" is one of fact, to be determined on the circumstances of each case. *In re Jorgensen*, 66 B.R. 104, 106 (9th Cir.BAP 1986). When the debtor is operating its business, has *completed* the § 1101(2)(A) transfers of property, and has *commenced* the § 1101(2)(C) distributions to creditors, it has substantially consummated its plan. *In re Hayball Trucking, Inc.*, 67 B.R. 681, 684 (Bankr.E.D.Mich.1986).

The statutory termination of the right to seek modification of a Chapter 11 plan is intended to promote finality in the reorganization process. *In re Penn Central Transportation Co.*, 42 B.R. 657, 666–67 (E.D.Pa.1984) (Act case). A debtor's creditors and interest-holders commit themselves to the governance of a particular mode of reorganization by acquiescing to confirmation of a plan, and by relying upon the terms and character of that plan in accepting it. Their rights under the plan then vest upon substantial consummation. *In re AT of Maine, Inc.*, 56 B.R. 55, 57 (Bankr.D.Me.1985). The generalized public interest in finality in court determinations, and the Bankruptcy Court's specific interest in the integrity of its remedies, would both be prejudiced by allowing modification of a confirmed Chapter 11 plan when the parties' rights have been settled in such a fashion.

Here, it is abundantly clear that Debtor has substantially consummated its confirmed plan. It accepted the grant from the Mayo Foundation from which it was to fund its distribution in satisfaction of bondholders' claims. It then turned those funds and others over to the Bank for its administration in the actual process of distribution to bondholders. Debtor has continued to carry on its business of operating a residential facility for senior citizens without interruption; its plan did not provide for the termination or divestment of any portion of that business. It has made all of the massive one-time lump-sum payments contemplated under the plan, in full. The Bank has commenced—and almost completed—the distribution to bondholders. Debtor has completed distribution to all creditors and (as of the date of hearing on this motion) almost all claimants treated under the plan. As Debtor has substantially consummated its plan and completed its reorganization, no one—not even Debtor or, if one existed, a non-debtor proponent of its plan—may now seek court-approved modification of that plan.

*C. Other Grounds Argued By Debtor.*

Debtor raises two additional arguments, which are founded on legal principles other than the technical points governing the availability of post-confirmation modification.

■ The first argument goes to the propriety of funding a class action with monies in which all of the bondholders have an entitlement. Debtor argues that the substance of the proposed modification does not comport with 11 U.S.C. §§ 1127(b) and 1123(a)(4), in that it makes no provision for bondholders who may opt pursuant to

FED.R.CIV.P. 23(c)(2) not to participate in the proposed class action and who would then forfeit their interest distribution without receiving benefit for that forfeiture. This objection is without merit. Even if the Committee had standing to obtain modification of the plan, and had timely acted to do so, it nonetheless would have to go through the process under 11 U.S.C. § 1125 of disclosure and solicitation as if it were confirming an original plan. 11 U.S.C. § 1127(c); *In re Mesta Machine Co.*, 67 B.R. 151, 159 (Bankr.W.D.Pa.1986). It would then be open to individual bondholders cast votes to accept or reject the plan as modified. The Court would then have to determine whether the class of bondholders accepted the modification by the requisite majorities, and whether the modification met the sequential requirements of 11 U.S.C. § 1129(a)(7) and, in the event of a rejection by the class, of 11 U.S.C. § 1129(b). Inherent in the concept of acceptance under 11 U.S.C. § 1126(c) and (d) is the principle by which a majority of the members of the class could bind a minority. G. TREISTER, *et al,* FUNDAMENTALS OF BANKRUPTCY LAW 373–4 (1986). Thus, if the requisite majorities within the bondholders' class accepted the modification, a dissident minority could be bound and would then not be entitled to receive its second distribution, so long as the proposed treatment for each class member met the equality requirement of 11 U.S.C. § 1123(a)(4). The Committee's proposed modification appears to meet this latter test, as it provides for a universal divestment of the bondholders' interest entitlement.

As part of its objection stemming from Rule 23, Debtor also argues that the proposed class action cannot possibly benefit all members of the class of bondholders. It asserts (in somewhat conclusory fashion) that the disparate circumstances under which individual holders purchased their bonds would prevent certification of a class of parties plaintiff containing *all* investors who held Debtor's bonds as of the commencement of this case and, therefore, an unknown segment of the class of bondholders would be deprived of their second distribution to support the litigation of those bondholders who may properly be members of a certified Rule 23 class. This argument could fairly be read as requiring a preliminary determination now, on class certification in the proposed bondholders' lawsuit. Essentially, Debtor is requesting this Court to rule that the class-action plaintiffs could not frame a class whose boundaries would be conterminous with the scope of the bondholders' class in this bankruptcy case, and still comply with the "commonality" and "typicality" requirements of FED.R.CIV.P. 23(a)(2) and (3). At least by implication, Debtor also suggests that the proposed plaintiffs could not identify a group of aggrieved bondholders who purchased their bonds under circumstances similar enough to satisfy the "commonality" requirement and who would still be numerous enough to satisfy the "numerosity" requirement of FED.R.CIV.P. 23(a)(1).

This Court is simply in no position to address these objections. Debtor has made no record on which one could even make conjectures on the complex factual and legal questions raised by the objection. In any event, even were it impossible for the proposed plaintiffs to obtain certification of a class action on behalf of all of Debtor's current or date-of-filing bondholders, this would not preclude the embodiment of a provision benefitting the members of a smaller litigation class in a modification to be submitted to all bondholders for their acceptance or rejection. The bondholders could very well elect to forgo receiving a small interest dividend to see whether such a class action might succeed, even if they themselves could not participate in the class action. As noted earlier, a majority vote to accept such a treatment would bind the minority.

Debtor premises its remaining argument on the asserted finality of this Court's confirmation and post-confirmation orders. Debtor correctly notes that no party in interest took an appeal from either of those orders within the period prescribed by BANKR.R. 8002(a). It then argues that, as a result, the rights of bondholders, creditors, and other parties in interest were settled by the terms of the confirmed plan;

and that those parties are now foreclosed from obtaining a modification of those terms by the doctrine of *res judicata.* This argument prevails, though not for reasons quite as perfunctory as those argued by Debtor.

■■■ It has long been recognized that the provisions of a reorganization plan, as merged into a bankruptcy court's order confirming that plan, have *res judicata* effect as to all rights and liabilities treated by the plan, once the confirmation order becomes final. *Stoll v. Gottlieb,* 305 U.S. 165, 170–1, 59 S.Ct. 134, 136–7, 83 L.Ed. 104 (1938); *In re Earley,* 74 B.R. 560, 562 (Bankr.C.D.Ill.1987); *In re Galerie des Monnaies of Geneva, Ltd.,* 55 B.R. 253, 257 (Bankr.S.D.N.Y.1985), *aff'd on other grounds,* 62 B.R. 224 (S.D.N.Y.1986); *In re Air Center, Inc.,* 48 B.R. 693, 695 (Bankr. W.D.Okla.1985). The availability of post-confirmation modification under the Bankruptcy Code, however, defers the *res judicata* finality of the confirmation order until after the point at which modification is barred by the occurrence of substantial consummation. 11 U.S.C. § 1127(b) does not require the proponent of a modification to show a change in factual circumstances from those on which the original plan was advanced and on which creditors may have based their acceptances. Thus, a proponent of modification may alter the rights of the parties as established in the original confirmed plan, so long as the modification is tested in the crucible of disclosure, solicitation, and court review under § 1129. Essentially, this means that a confirmation order—to the extent premised upon the factual and legal bases required under § 1129—is not "final" for *res judicata* purposes, notwithstanding the expiration of appeal periods, until the parties' rights have vested by the act of substantial consummation. That point has passed in this case and the Committee is barred by *res judicata* (however that doctrine may be qualified in the Chapter 11 context) from obtaining a modification of Debtor's confirmed plan.

### D. The Committee's Invocation of 11 U.S.C. § 105(a).

■■■ At hearing, the Committee's counsel noted that the Committee had elected to cast its motion under the provisions of 11 U.S.C. § 105(a), the "All Writs" statute authorizing the Bankruptcy Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Counsel apparently made this assertion as a hedge against a finding adverse to the Committee under § 1127(b). To be sure, the Bankruptcy Court is fundamentally a court of equity. *Kenneally v. Standard Electronics Corp.,* 364 F.2d 642, 647 (8th Cir.1966). As such, it is granted considerable latitude to fashion the ultimate form of the relief which it accords to parties before it. However, the equity powers of the Bankruptcy Court "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* —— U.S. ——, —— – ——, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988). The Bankruptcy Court can only exercise its powers "in a manner which is consistent with the provisions of the [Bankruptcy] Code." *Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir. 1983). Here, Congress has set certain threshold eligibility requirements for the invocation of specific remedies and has fixed specific deadlines for that invocation. This Court is without authority to abrogate those requirements by perfunctorily citing § 105(a) to create a remedy which is in all respects identical to the statutory remedy but which is otherwise barred. Thus, § 105(a) is unavailing to the Committee, as the relief which it seeks was available only under § 1127, if at all.

IT IS THEREFORE ORDERED that the motion of Debtor's Official Bondholders' Committee for an order modifying this Court's May 20, 1987 confirmation and post-confirmation orders is denied in all respects.