**In re BEDFORD SPRINGS HOTEL, INC., Debtor.**

**Bankruptcy No. 88–0589.**
**Motion No. 89–2019M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

May 15, 1989.

settled their claims with Raymark and submitted all necessary paperwork by February 10, 1989.

Joseph E. Schmitt, Trustee Stonecipher, Cunningham, Beard & Schmitt Pittsburgh, Pa.

Eric A. Schaffer, Reed, Smith, Shaw & McClay, Emil Hirsch, Esquire Thomas, Hirsch & Albert, Washington, D.C., Pittsburgh, Pa., Emil Hirsch, Thomas, Hirsch & Albert, Washington, D.C., for Asher J. Sky.

David K. Rudov, Rudov & Stein, Pittsburgh, Pa., for Creditors' Committee.

Gary Philip Nelson, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for Union Nat. Bank.

William A. Duerk, Ross & Duerk, Washington, D.C., for F. Bruce Corneal, Jr.

9. The record reflects that, after excluding Packer, Gantt and Foster, 49 creditors comprise this group.

Stephen I. Goldring, Asst. U.S. Trustee, Pittsburgh, Pa.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is Asher J. Sky's ("Movant") Request that this Court find that the Plan of Reorganization in this case has been substantially consummated and that the sale of Debtor's assets was made to a good faith purchaser. Respondent, F. Bruce Corneal, Jr., claims that the Reorganization Plan has not been substantially consummated and the sale should be rescinded as not having been made to a good faith purchaser. The parties have presented their positions and have submitted exhibits in support thereof. Based upon same and this Court's further research, we find that the Plan has in fact been substantially consummated, and the sale of Debtor's assets was made to a good faith purchaser.

Before reaching the rather elaborate facts in the instant case, it is appropriate to analyze the law relating to the issue of substantial consummation.

Section 1101(2) defines substantial consummation as:

A) Transfer of all or substantially all of the property proposed by the plan to be transferred;

B) Assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

C) Commencement of distribution under the plan.

The statute is written in the conjunctive; therefore, all three elements must be proved in order to reach a determination that the plan has been substantially consummated. *U.S. v. Novak*, 86 B.R. 625 (D.S.D.1988); *In re Gene Dunavant and Son Dairy*, 75 B.R. 328 (M.D.Tenn.1987). Findings made by this Court relating to these three (3) elements are factual and are based upon the credible evidence provided

by the parties. *In re Jorgensen*, 66 B.R. 104 (9th B.A.P.1986); *In re Charterhouse, Inc.*, 84 B.R. 147 (Bankr.D.Minn.1988).

Although few courts have analyzed this issue in depth, those that have, support a particular analysis which this Court adopts as well. That discussion revolves around the distinctions between subsections (A) and (C); which, if not carefully reviewed, might be considered congressional redundancy. A thorough examination shows that they address very different items and require different treatment.

 The transfers contemplated in subsection (A) are those to or from the debtor at or near the time of plan confirmation. These transfers must be completed *or* near completion for the plan to be substantially consummated. *U.S. v. Novak, supra; In re Charterhouse, Inc., supra; In re Hayball Trucking, Inc.*, 67 B.R. 681 (Bankr.E. D.Mich.1986).

On the other hand, subsection (C) deals with those distributions to creditors which are to occur over time, presumably from operating revenues. By inference, then, these transfers cannot be near completion soon after the plan's confirmation. Subsection (C) requires only that such a distribution be *commenced*. *U.S. v. Novak, supra; In re Hayball, supra.*

A. Transfer Of All Or Substantially All Of The Property Proposed By The Plan To Be Transferred

 As stated above, this element involves those transfers which the Plan contemplates will be completed quickly. The confirmed Plan of Reorganization in the case at bar includes the following such transfers:

(1) *The Sale Of Debtor's Real Estate To The Purchaser*
This sale occurred over a 2–3 week period, with final settlement occurring on February 28, 1989. The Purchaser took an assignment of the outstanding super priority claim, and used same as a setoff against the purchase price. Purchaser also executed an assumption agreement and deed in lieu of

foreclosure with the Debtor's primary lender on February 28, 1989. The remainder of the debt secured by the real estate was assumed by the purchaser, and the secured parties retained their respective liens.

(2) *The Sale Of Debtor's Personalty To The Purchaser*

The sale occurred on February 24, 1989, by Bill of Sale executed by the 'Trustee, and included all of Debtor's equipment, furniture, furnishings, accessories, goods and other items found on the above-mentioned real estate. The Bill of Sale also transferred Debtor's rights and interests in leases for golf carts, telephone systems, and other equipment.

From the purchase price several other transfers were made to various creditors at or about the time of closing, to-wit:

(1) Gazette Publishing was paid in full at or about the time of closing, and its judgment has been satisfied of record;

(2) A judgment held by the Pennsylvania Department of Revenue was paid at the closing, and same has been marked satisfied of record;

(3) A judgment held by the Pennsylvania Department of Labor and Industry was paid at the closing and has been satisfied on the record; and

(4) Purchaser provided the Unsecured Creditors with a $500,000.00 irrevocable letter of credit to make a distribution. These creditors, through their counsel, have drawn down said letter of credit and deposited the proceeds thereof in a short term certificate of deposit.

These items constitute all or substantially all of the transfers proposed by the confirmed Plan of Reorganization.

B. Assumption By The Successor To The Debtor Under The Plan Of The Business Dealt With By The Plan

Subsequent to the closing on February 28, 1989, the Purchaser took physical control of the real and personal property, and began active "hands on" management of the facility as well. The Purchaser's officer was on site almost daily and supervised the preparation of the golf course, the organization of the front office and administrative/regulatory activities, such as licensing and financing. Many of the Debtor's former employees were rehired, and the hotel began running under the auspices of the new owner. The Purchaser has been meeting its regular operating expenses, including utilities, payroll, lease payments, taxes, insurance, debt service, trade creditors, maintenance, and advertising. From March 1 through April 14, 1989, total expenses paid by the Purchaser exceeded $390,000.00. The Trustee relinquished all operation and control of the Debtor upon the closing and no longer employed any personnel in relation thereto. There is substantial proof, therefore, that the Purchaser, as successor to the Debtor under the plan, has assumed the business and management thereof.

C. Commencement Of Distribution Under The Plan

Pursuant to the confirmed Plan of Reorganization, the debts owed to several creditors were assumed and placed on an installment payment plan. These included:

(1) Union National Bank—To receive regular monthly interest payments and a protected fund equaling a minimum of two (2) months' payments.

(2) Borough of Bedford—To receive thirty-six (36) monthly installments of principal and interest.

(3) Internal Revenue Service, PA Department of Revenue, PA Department of Labor & Industry, PA Department of Unemployment Compensation, Bedford County Taxing Authorities, and Borough of Bedford—All taxing bodies received promissory notes on or about February 13, 1989, deferring cash payments over six (6) years in seventy-two (72) monthly installments.

These payments have been commenced. Additionally we note that the unsecured creditors, generally the group forced to wait the longest for payment, if they are to

be paid at all, have already been paid $500,-000.00, to be divided and distributed *pro rata;* and said sum is presently invested on the short term, collecting interest. At the very least these distributions, required by the Plan, have been "commenced".

Based upon the foregoing facts and the limited law available on the issue, the decision before us in quite clear: this Plan has in fact been substantially consummated, and in fact, has been substantially *completed.*

■ We now turn to the issue of whether Movant is a good faith purchaser. Neither the Bankruptcy Code nor the Rules provides any definition of "good faith". Our Circuit Court, and others, have adopted the traditional equitable principles which hold that the term includes anyone who purchases in "good faith" and for "value". *Miami Center Limited Partnership v. Bank of New York*, 838 F.2d 1547 (11th Cir.1988) *cert. den'd,* — U.S. —, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir.1986); *In re Bel Air Associates, Ltd.*, 706 F.2d 301 (10th Cir. 1983); *In re Rock Industries Machinery Corp.*, 572 F.2d 1195 (7th Cir.1978).

"The requirement that a purchaser act in good faith ... speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies, supra; In re Rock Industries, supra.*

Respondent has alleged that Movant's good faith status is jeopardized by its status as an insider and a party to the appeal of the Order confirming the Plan of Reorganization. Respondent has provided no case law to support its contention and we know of none. Those cases which do discuss a purchaser's knowledge of adverse claims, as said knowledge affects "good faith" status, have said that knowledge of claims which have been asserted in an appeal presently pending, in no way deprives a purchaser of "good faith" status. *Miami Center Limited Partnership, supra; In re Dutch Inn of Orlando, Ltd.*, 614 F.2d 504 (5th Cir.1980). In this case, it is the very status of purchaser which made Movant a party to the appeal. Respondent's use of circular logic cannot be permitted to carry the day. Nor has Respondent provided this Court with any case stating that an insider cannot be a good faith purchaser. There has been no evidence or allegation of fraud or collusion or attempts at unfair advantage. A Plan of Reorganization was confirmed by the votes of the creditors. They were the parties who received two separate and distinct Disclosure Statements and two separate and distinct Plans of Reorganization. The "people" were thoroughly informed, and chose the "candidate" which they thought could offer them the best results. We find no advantage taken.

Regarding value, we look to the traditional holding: "Fair and valuable consideration is given in a bankruptcy sale when the purchaser pays seventy-five percent (75%) of the appraised value of the assets." *In re Abbotts Dairies, supra; In re Bel Air Associates, supra; In re Rock Industries, supra.* The appraised value of the Debtor's assets was approximately $7.5 million: Movant paid nearly $9 million. Therefore, sufficient value has been given.[1]

Based upon the above, we find that Movant was a good faith purchaser.

An appropriate Order will be issued.

---

1. Even if the value of Debtor's assets were $10 million, as Respondent has repeatedly claimed, Movant's purchase price is nearly ninety percent (90%) of the sum, substantially more than the seventy-five percent (75%) required.