**IN RE MAGNESIUM CORPORATION OF AMERICA, Debtor,**

**The Renco Group, Inc. & Ira Leon Rennert, Appellants,**

v.

**Lee E. Buchwald, Appellee.**

**16–cv–6822 (AJN)**

United States District Court, S.D. New York.

Signed 07/18/2017

Adam L. Shiff, David M. Friedman, Shai Schmidt, Kasowitz, Benson, Torres & Friedman L.L.P., New York, NY, for Appellants.

Nicholas F. Kajon, Constantine D. Pourakis, Stevens & Lee, PC, New York, NY, for Appellee.

## MEMORANDUM & ORDER

ALISON J. NATHAN, United States District Judge

In this bankruptcy case, Appellee Lee E. Buchwald, as Trustee for the Renco bankruptcy estate, has moved to dismiss the appeal filed by the Renco Group, Inc. & Ira Leon Rennert (collectively, the "Renco Appellants") challenging the Bankruptcy Court's decision to approve the Trustee's sale of a litigation interest. Because the Renco Appellants failed to obtain a stay of the sale, the Court grants the motion except as to the question of whether there was a good faith purchaser. And because the Bankruptcy Court did not err in concluding that there was a good faith purchaser, the Court dismisses the appeal.

## I. Background[1]

This case has a long procedural history, which the Court only briefly outlines here.

On August 2, 2001, Debtors Magnesium Corporation of America ("MagCorp") and Renco Metals, Inc., wholly owned subsidiaries of The Renco Group, Inc., filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Bank. Ct. Dkt. No. 1; Mot. at 5 (Dkt No. 16); Opp. at 4

---

1. The facts set herein are largely taken from the underlying Bankruptcy Court docket, No. 01–bk–14312, and the docket in this particular case.

(Dkt No. 20); *Buchwald v. Renco Grp.*, 539 B.R. 31, 35 (S.D.N.Y. 2015). In 2003, the Bankruptcy Court converted the case to Chapter 7 and appointed Appellee Buchwald as Trustee. Bank. Ct. Dkt. Nos. 400, 419.

In 2003, the Trustee initiated an adversary proceeding against the Renco Group and others. The Trustee alleged that, while the debtors were insolvent, they illegally and fraudulently arranged a $150 million note offering to finance certain dividends and stock redemptions. *In re Magnesium Corp. of Am.*, No. 13–cv–7948 (AJN) (S.D.N.Y.) (Dkt No. 36). The case was withdrawn from the Bankruptcy Court and assigned to the undersigned on December 12, 2013.

The case proceeded to trial in February 2015. The jury returned a multimillion dollar verdict in the Trustee's favor on claims of fraudulent conveyance, aiding and abetting fraudulent conveyance, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment. *See Buchwald*, 539 B.R. at 35. After subsequent litigation over the prejudgment interest rate that should apply, a judgment was entered in the amount of $183,698,246.58 (plus post-judgment interest) against the Renco Group and $29,500,847.12 (plus post-judgment interest) against Ira Rennert. *In re Magnesium Corp. of Am.*, No. 13–cv–7948 (AJN) (S.D.N.Y.) (Dkt No. 425). The Renco Group and Rennert filed appeals, and the Trustee filed a cross-appeal on the issue of prejudgment interest. *In re Magnesium Corp. of Am.*, No. 13–CV–7948 (AJN) (S.D.N.Y.) (Dkt Nos. 424, 426).

In March 2016, while the appeals were pending, the Trustee decided to sell a partial interest in this judgment. Mot. at 8. On July 18, 2016, after a hearing, the Bankruptcy Court approved the Trustee's notice of auction and proposed bidding procedures. Bank. Ct. Dkt. No. 724. Accordingly, an auction was held on August 11, 2016. 8/23/16 Tr. at 27 (Dkt No. 16–2). The Renco Appellants sought to participate as bidders in the auction, but the Trustee denied them access on the ground that they had submitted an unqualified bid. *Id.* at 28, 30–31, 94. During the auction, two bids were submitted. *Id.* at 38. Bidder AEM won the auction, agreeing to pay $26.2 million for the right to collect the first $50 million of the approximately $213 million judgment, should the $213 judgment be affirmed on appeal. 8/23/16 Tr. at 7–8, 18; 9/7/16 Tr. at 8 (Dkt No. 16–1).

On August 23, 2016, the Bankruptcy Court held a sale hearing regarding whether to approve this sale. 8/23/16 Tr. at 7; *see* 11 U.S.C. § 363(b) (noting that the trustee "may use, sell, or lease . . . property of the estate" only "after notice and a hearing"). Present at the hearing were the three largest creditors of the bankruptcy estate: the Renco Appellants, the Environmental Protection Agency, and an ad hoc consortium of Renco Metals noteholders ("Noteholders"). 8/23/16 Tr. at 3–4. Together, the Noteholders hold approximately 75% of the unsecured notes issued by the debtors in this case. 8/23/16 Tr. at 3; 9/7/16 Tr. at 10. At the hearing, the Trustee justified the sale on the ground that it would introduce immediate liquidity into the bankruptcy estate and that it hedged against the risk that the $213 million judgment would be reversed on appeal because, even if the judgment were reversed, the $26.2 million sale price would still be available for distribution to the creditors. 8/23/16 Tr. at 18, 22, 28, 40–42. As the Trustee explained, while he obtained a "tremendous victory against the Renco Group and Ira Rennert" during the trial before the undersigned, "all litigation is fraught with peril and unpredictability," so "he made a business decision to . . . monetize a portion of the net proceeds" potentially recoverable from the debtors. Dkt.

No. 16–3 at 2. The Renco Appellants and Noteholders objected to the sale, arguing, among other things, that was no need to introduce liquidity into the bankruptcy estate, that the sale removed approximately $25 million from the creditors if the judgment was affirmed on appeal, and that there was no evidence that AEM was a good faith purchaser. 8/23/16 Tr. at 9, 41–42, 56–59, 70, 73. After hearing oral argument, the Bankruptcy Court approved the sale and entered a sale order. 8/23/16 Tr. at 92. It also explicitly found that AEM was a good faith purchaser. 8/23/16 Tr. at 94–96. The Bankruptcy Court denied the Noteholders' request to stay the sale pending appeal. 8/23/16 Tr. at 103; 9/7/16 Tr. at 7. The Renco Appellants did not request a stay. *See id.*; *see also* Mot. at 2.

The Renco Appellants and. Noteholders appealed the Bankruptcy Court's approval of the sale to this Court. The Renco Appellants filed an appeal on August 30, 2016 in case number 16–cv–6822. The Noteholders filed an appeal the next day in case number 16–cv–6844. On September 1, 2017, the Noteholders filed an emergency motion to stay the sale order pending appeal. *In re Magnesium Corp. of Am.*, No. 16–cv–6844 (S.D.N.Y.) (Dkt No. 4). The cases were originally assigned to the Honorable Denise L. Cote, who held oral argument on the emergency motion on September 7, 2016. 9/7/16 Tr. at 4. After hearing argument, Judge Cote denied the motion to stay the sale order. 9/7/16 Tr. at 46; Dkt. No. 10. Accordingly, the sale of the Renco litigation interest to AEM closed on September 8, 2016. Dkt No. 17–2; Mot. at 9.

On September 21, 2016, the case was reassigned from Judge Cote to the undersigned as related to the earlier case that resulted in the approximately $213 million verdict. The Trustee filed a motion to dismiss the appeal. Dkt. No..15. A few weeks later, the Noteholder Appellants voluntarily dismissed their appeal. *In re Magnesi-*

*um Corp. of Am.*, No. 16–cv–6844 (S.D.N.Y.) (Dkt Nos. 19, 20). The Renco Appellants remained in the case and filed an opposition to the Trustee's motion to dismiss. Dkt. No. 20.

On March 8, 2017, the Second Circuit Court of Appeals affirmed this Court's judgment that followed the jury trial against the Renco Group in the related case. *See Matter of Magnesium Corp. of Am.*, 682 Fed.Appx. 24, 30, 2017 WL 946729, at *4 (2d Cir. 2017). Accordingly, the approximately $213 million verdict against the Renco Group and Ira Rennert is final.

The Court now resolves the motion to dismiss and this appeal.

## II.   Discussion

The Trustee seeks to dismiss the Renco Appellants' bankruptcy appeal on two grounds. First, the Trustee contends that the appeal is moot because the bankruptcy court and district court refused to stay the sale of the litigation interest. Mot. at 10–11. Second, the Trustee argues that the Renco Appellants, who did not participate in the challenged auction, lack standing to pursue this appeal. Mot. at 17–18. As explained below, the Court concludes that the appeal is moot except as to the question of whether AEM was a good faith purchaser and that the Renco Appellants do have standing to raise this issue. The Court nonetheless dismisses the appeal because the Bankruptcy Court did not err in concluding that the sale was made to a good faith purchaser.

**1.   Because the Sale Has Consummated and No Stay Was Granted, The Appeal Is Limited to the Narrow Issue of the Good Faith of the Purchaser.**

Section 363(m) of the Bankruptcy Code limits appellate jurisdiction over a sale order. That provision states:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). In interpreting this provision, the Second Circuit has held that "appellate jurisdiction over an unstayed sale order issued by a bankruptcy court is statutorily limited to the narrow issue of whether the property was sold to a good faith purchaser." *In re Gucci*, 105 F.3d 837, 839 (2d Cir. 1997) (emphasis omitted); *see also In re WestPoint Stevens, Inc.*, 600 F.3d 231, 250 (2d Cir. 2010) ("We repeat that we lack jurisdiction to review the Sale Order unless a stay has been entered or there is a challenge to the 'good faith' aspect of the sale."); *Deep v. Danaher*, 310 Fed.Appx. 433, 434 (2d Cir. 2009) ("Our review of the authorization of a sale in bankruptcy court is limited to whether the sale was made to a good faith purchaser unless 'authorization and ... sale ... were stayed pending appeal.'" (ellipses in original) (quoting 11 U.S.C. § 363(m)). Applying that rule here, because the Bankruptcy Court and Judge Cote both denied the motion to stay the sale order, *see* 9/7/16 Tr. at 7, 46, the only issue cognizable before this Court on appeal is whether the sale was made to a good faith purchaser.

The parties do not appear to disagree with this conclusion. Although the Trustee argues that "the appeals are statutorily moot and must be dismissed" in absolute terms, he later concedes that appellate jurisdiction does exist as to the "limited ... issue of good faith." Mot. at 10. Similarly, the Renco Appellants admit that the only issue they may raise on appeal is a challenge to the Bankruptcy Court's deter-

mination that AEM was a good faith purchaser. Opp. at 9–10. The Court therefore grants the Trustee's motion to dismiss except as to the question of whether AEM was a good faith purchaser.

## 2. The Renco Appellants Have Standing to Challenge the Bankruptcy Court's Good Faith Purchaser Finding.

In addition to arguing that the appeal is statutorily moot, the Trustee also contends that the Renco Appellants lack standing to bring this appeal. Mot. at 17–18. The Court disagrees.

"To have standing to appeal from a bankruptcy court ruling in this Circuit, an appellant must be an 'aggrieved person,' a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *Gucci*, 126 F.3d at 388 (citations and quotation marks omitted). This test is "stricter than Article III's 'injury in fact' test for standing." *Id.* Accordingly, the Second Circuit has held that "unsuccessful bidders usually lack standing to challenge a bankruptcy court's approval of a sale." *Id.* The Trustee appears to argue that, because the Renco Appellants were not permitted to participate in the auction, they are at best "unsuccessful bidders" who cannot challenge the Bankruptcy Court's approval of the sale of the Renco litigation interest. *See* Mot. at 17–18.

The Trustee ignores, however, that the Second Circuit recognizes an exception to the general rule that unsuccessful bidders lack standing. *In re Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir. 1997) ("[T]he rule denying standing to unsuccessful bidders is not absolute."). Specifically, the Second Circuit has held that "an unsuccessful bidder challenging the intrinsic fairness of the sale has standing to appeal an order directing that sale." *Gucci*,

126 F.3d at 388. The Second Court has further concluded that challenges to the Bankruptcy Court's determination that the sale was made to a good faith purchaser fall within this "intrinsic fairness" exception. *See WestPoint*, 600 F.3d at 250; *Gucci*, 126 F.3d at 388; *Colony Hill*, 111 F.3d at 274. In other words, unsuccessful and "disqualified" bidders do have standing to raise a good faith purchaser challenge. *See Colony Hill*, 111 F.3d at 273–74 (holding that a party had standing to raise the good faith purchaser issue, even though the bankruptcy court had "refused to allow [the party] to bid based on its own failure to comply with the court-approved bidding procedures."). The Court therefore rejects the Trustee's argument that the Renco Appellants lack standing, at least with respect to this narrow issue.

### 3. The Bankruptcy Court Did Not Err in Concluding the Sale Was Made to a Good Faith Purchaser.

Having concluded that the good faith purchaser issue is not moot and that the Renco Appellants have standing to raise this argument, the Court turns to the narrow issue properly before it, namely, whether the Bankruptcy Court erred in finding that AEM was a good faith purchaser.

A court reviewing the conclusions of a bankruptcy court "exercise[es] *de novo* review over the legal standards applied and examin[es] its findings of fact for clear error." *Gucci*, 126 F.3d at 390. "The 'good-faith purchaser' determination is a mixed question of law and fact." *Id.*; *see also In re MSR Resort Golf Course LLC*, No. 13 Civ. 2448(KPF), 2014 WL 67364, *6 (S.D.N.Y. Jan. 7, 2014).

Although the Bankruptcy Code does not define the meaning of "good faith purchaser," the Second Circuit has provided context to the term. *See Gucci*, 126 F.3d at 390; *Colony Hill*, 111 F.3d at 276;

*In re Metaldyne Corp.*, 421 B.R. 620, 625 (S.D.N.Y. 2009). Specifically, the Second Circuit has "adopted a traditional equitable definition: 'one who purchases the assets for value, in good faith and without notice of adverse claims.' " *Gucci*, 126 F.3d at 390 (quoting *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985)). "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Colony Hill*, 111 F.3d at 276 (citation omitted). The "good faith" inquiry focuses on "the integrity of [the purchaser's] conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made." *In re Lehman Bros. Holdings, Inc.*, 415 B.R. 77, 84 (S.D.N.Y. 2009) (quoting *Gucci*, 126 F.3d at 390). During the sale hearing, the Bankruptcy Court correctly identified this governing legal standard. 8/23/16 Tr. at 94 (Bankruptcy Court stating "that the good faith of a purchaser is shown by the integrity of the purchaser's conduct during the course of the sale proceedings" and that "a purchaser's good faith is lost by a showing of fraud, collusion between the purchaser and other bidders, or the trustee, or an attempt to take grossly unfair advantage of other bidders").

In their briefing, the Renco Appellants do not make any specific, factual arguments suggesting that AEM was not a good faith purchaser. For example, Appellants do not argue that AEM committed fraud or that there was collusion between AEM, the other bidder, or the Trustee. *See* Opp. at 9–12. Rather, Appellants' sole argument in this appeal is that the Bankruptcy Court erred in making a good faith finding because "the Trustee put forth no evidence of good faith." Opp. at 11; *see id.*

at 10–11 (arguing that "there is no doubt that the Bankruptcy Court's finding that AEM was a good faith purchaser was clearly erroneous and unfounded" because the Trustee failed to meet its "affirmative burden ... to present evidence" of good faith); *id.* at 12 ("[T]he Bankruptcy Court's finding in the Sale Order that AEM was a good faith purchaser was not supported by evidence and such a finding was clearly erroneous.")

Appellants' argument fails, however, because the Trustee did proffer evidence of good faith, and the Bankruptcy Court relied on such evidence when rendering its good faith finding. For example, the Bankruptcy Court noted that there was a "robust marketing process" and that it had evidence before it "that the agreement between AEM and the trustee was negotiated at arm's length and in good faith." 8/23/16 Tr. at 95; *see Lehman Bros. Holdings, Inc.*, 415 B.R. at 81–82 (affirming good faith finding when there was evidence that "the post-bankruptcy sale ... had been negotiated 'aggressively' and 'at arm's length'"). Additionally, the Bankruptcy Court noted the "evidence in the record ... that the auction increased the consideration ... being paid by AEM." 8/23/16 Tr. at 95. Specifically, during the auction process, the amount AEM agreed to pay increased (from $25 million to $26.2 million) while the amount AEM would receive if the judgment was affirmed decreased (from $53,750,000 to 50 million), thereby improving the benefit to the estate in an amount "just shy of $5 million." 8/23/16 Tr. at 28. As the Bankruptcy Court reasoned, the fact that the auction process improved the benefit to the bankruptcy estate further suggests that AEM was a good faith purchaser. *See Colony Hill*, 111 F.3d at 276 (noting that a good faith purchaser is someone who pays "value" for the auctioned property). And finally, the Bankruptcy Court found, and the Appellants appear to concede as much, that "no

evidence, whatsoever, of any kind of collusive bidding or improper agreements or understandings between and among the parties was put forward." 8/23/16 Tr. at 95. As mentioned, the Renco Appellants make no claim that there was actually bad faith in this case; they argue solely that there was no evidence of good faith. But courts in this district have repeatedly relied on the lack of any evidence of bad faith when affirming a good faith purchaser finding. *See, e.g., Neogenix Oncology, Inc. v. Gordon*, No. CV 14–4427 (JFB) (AKT), 2017 WL 1207558, at *11 (E.D.N.Y. Mar. 31, 2017) (rejecting argument of bad faith when the challenging party failed to proffer "any independent factual or evidentiary basis" to suggest the purchaser did not act in good faith); *MSR Resort Golf Course*, 2014 WL 67364, at *7 (rejecting challenge premised on lack of good faith when "[t]he Appellant simply ha[d] not provided any reason to doubt the Bankruptcy Court's [good faith] conclusion"); *Metaldyne*, 421 B.R. at 625 (affirming good faith finding when the challenger "fail[ed] to cite to any portion of the record supporting th[e] assertion" that the bankruptcy court erred in finding good faith); *Bace v. Babitt*, No. 07 Civ. 2420(WHP), 2008 WL 800579, at *3 (S.D.N.Y. Mar. 25, 2008) (affirming good faith purchaser finding when "[t]here is no evidence to contradict the Bankruptcy Court's finding that [the purchaser] conducted its negotiations with the Trustee in good faith and at arm's length"). Here, the Renco Appellants ignore the fact that the Trustee did actually present evidence of good faith, and they proffer no arguments or factual support suggesting that AEM was a bad faith purchaser. For these reasons, the Court rejects Appellants' argument that there was no evidence of good faith and holds that the Bankruptcy Court did not err in concluding that the Renco litigation interest was sold to a good faith purchaser.

## III. Conclusion

As explained above, the Appellants' appeal is moot except to the extent that they make a good faith purchaser challenge, and the Bankruptcy Court did not err in concluding that AEM was a good faith purchaser. The Court accordingly grants the Trustee's motion to dismiss in part, and the Court also dismisses this appeal. This resolves Docket Number 15. The Clerk of the Court is respectfully requested to close this case.

SO ORDERED.